lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MID-WEST ANESTHESIA CONSULTANTS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 09-2219-JAR ) |
| LIFEPOINT HOSPITALS, INC., et al., | ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

Mid-West Anesthesia Consultants, L.L.C. ("Mid-West") filed suit against defendants Dodge City Healthcare Group, L.P., d/b/a Western Plains Medical Complex ("Western Plains") and LifePoint Hospitals, Inc. ("LifePoint"), alleging breach of contract stemming from a Professional Services Agreement ("the Agreement"). This matter comes before the Court on defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. 4). For the reasons set forth below, defendants' motion is granted.

**I. Factual Background**

Defendant Dodge City Healthcare Group, L.P., owns and operates a health care facility located in Dodge City, Kansas, that is commonly known and referred to as Western Plains Medical Complex. On May 18, 2006, Mid-West and Western Plains entered into a Professional Services Agreement along with several addendums (collectively "the Agreement"). The Agreement provides that Mid-West is to be the exclusive provider of anesthesia-related services on behalf of Western Plains. Defendant LifePoint, the parent company of Western Plains, is not

a party to the Agreement.

The Agreement contains an Alternate Dispute Resolution provision in paragraph 5.7, which addresses arbitration of certain claims. That section provides:

> Alternate Dispute Resolution. The parties firmly desire to resolve all disputes arising hereunder without resort to litigation in order to protect their respective business reputations and the confidential nature of certain aspects of their relationship. Accordingly, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall first attempted to be settled by non-binding mediation. In the event mediation efforts are unsuccessful, the dispute shall be settled by arbitration administered by either the American Arbitration Association or the American Health Lawyers Association in accordance with its rules, and judgment on the award rendered by the arbitrator or arbitrators shall be binding and conclusive on the parties, and shall be kept confidential by the parties to the greatest extent possible. No disclosure of the award shall be made by the parties except as required by the law or as necessary or appropriate to effectuate the terms thereof. The location for such mediation shall be in the city where the Facility is located.

The Agreement also contains a forum selection clause in Section V of Addendum 1, which provides:

> Governing Law; Venue; Mediation. This Agreement shall be governed and construed in accordance with the laws of the State of Kansas. This Agreement and its subject matter have substantial contacts with Kansas, and all actions, suits, or other proceedings with respect to this Agreement shall be brought only in a court of competent jurisdiction sitting in the county in which the Facility is located, or in the Federal District Court having jurisdiction over such county. In any such action, suit, or proceeding, such court shall have personal jurisdiction of all of the parties hereto, and service of process upon them under any applicable statutes, laws, and rules shall be deemed valid and good. Notwithstanding the foregoing parties must first submit any dispute to the mediation services of American Arbitration Association and mediate such dispute in good faith.

Pursuant to the Agreement, the parties engaged in non-binding mediation on or about

April 17, 2009. Mediation was unsuccessful, and Mid-West filed this lawsuit without first submitting the dispute to arbitration.

**II.    Analysis**

Defendants urge the Court to compel arbitration of Mid-West's claims under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*.[1] Mid-West opposes defendants' motion, asserting that (1) the forum selection clause in Section V of Addendum 1 renders the Agreement ambiguous and (2) LifePoint is not subject to the Arbitration clause.

The FAA ensures that written arbitration agreements in maritime transactions and transactions involving interstate commerce are "valid, irrevocable, and enforceable."[2] Federal policy favors arbitration agreements and requires that the Court rigorously enforce them.[3] Generally, on a motion to compel arbitration under the FAA, the district court applies a strong presumption in favor of arbitration.[4] Where the parties dispute whether a valid and enforceable arbitration agreement exists, however, this presumption of arbitrability falls away.[5]

FAA Section 3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such

---

[1]Because the Agreement between the parties involves interstate commerce, plaintiff acknowledges that the FAA would apply in this matter, without conceding that it would compel arbitration.

[2]9 U.S.C. § 2.

[3]*Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

[4]*ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (stating FAA evinces strong federal policy in favor of arbitration).

[5]*Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[6]

In seeking to compel arbitration, defendants bear the initial burden to present evidence sufficient to demonstrate an enforceable agreement to arbitrate.[7] Once defendants meet this burden, plaintiff must show a genuine issue of material fact as to the making of the agreement.[8] This creates, in effect, a summary-judgment-like standard that the court applies in deciding whether to compel arbitration.[9]

The question of arbitrability is an issue for judicial determination.[10] Before granting a stay or dismissing a case pending arbitration, the court must determine that the parties have a written agreement to arbitrate.[11] The existence of an arbitration agreement "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."[12]

The court may compel arbitration only when satisfied that the making of the agreement is not at issue.[13] State law principles of contract formation govern whether a valid arbitration

---

[6] 9 U.S.C. § 3.

[7] *Hill v. Ricoh Americas Corp.*, 634 F. Supp. 2d 1247, 1253 (D. Kan. 2009) (citing *SmarText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003)).

[8] *Id.*

[9] *Id.* (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1223-24 (D. Kan. 2007)).

[10] *AT & T Techs., Inc. v. Comm'n Workers of Am.*, 475 U.S. 643, 649 (1986).

[11] *See* 9 U.S.C. §§ 3 and 4; *Avedon Eng'r, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).

[12] *Avedon*, 126 F.3d at 1283.

[13] *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004).

agreement exists.[14] The parties agree that Kansas law applies. Under Kansas law, "[t]he primary rule when interpreting a written contract is to ascertain the intent of the parties. As a general rule, if the language of the written instrument is clear, there is no room for rules of construction.[15]

"The cardinal rule of contract construction requires courts to determine the parties' intent from the four corners of the instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision."[16] "An instrument is ambiguous when the application of pertinent rules of interpretation to the whole 'fails to make certain which one of two or more meanings is conveyed by the words employed by the parties.'"[17]

### A. Validity of Arbitration Clause

Mid-West argues the Agreement is ambiguous, because it provides both an arbitration clause and allows "all actions, suits or other proceedings" relating to the Agreement to be brought in Federal District Court. Defendants counter that these clauses can be reconciled so that the arbitration clause remains in effect.

Although the Tenth Circuit has not addressed the relationship between forum selection and arbitration clauses, several other circuit courts hold that choice of forum clauses are not inconsistent with, but rather, complimentary to arbitration provisions. In *Bank Julius Baer &*

---

[14]*Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

[15]*Red Dog Saloon v. Sedgwick County Bd. of Comm'rs*, 33 P.3d 869, 971 (Kan. App. 2001) (citing *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1219 (Kan. 1998)).

[16]*Metro. Life Ins. Co. v. Strnad*, 876 P.2d 1362, 1371 (Kan. 1994) (citations omitted).

[17]*Cent. Natural Res., Inc. v. Davis Operating Co.*, 201 P.3d 680, 687-88 (Kan. 2009) (quoting *Wood v. Hatcher*, 428 P.2d 799, 803 (Kan. 1967)).

*Co. v. Waxfield Ltd.*,[18] the parties entered into an arbitration agreement, followed by another agreement with a forum-selection clause.[19] Defendant objected to plaintiff's attempt to submit a dispute to arbitration, arguing that the forum selection clause, by "admitting the possibility of litigation in court," operated as a waiver of the arbitration agreement.[20] The Second Circuit disagreed, stating:

> Under our cases, if there is a reading of the various agreements that permits the Arbitration Clause to remain in effect, we must choose it: "The existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it is said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Moreover, we "cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration."[21]

The forum selection clause in *Waxfield* did not mention arbitration, and the court thus concluded that it could not be construed to "specifically preclude" arbitration.[22] Instead, the court held that the clause

> may be read, consistent with the Arbitration Agreement, in such a way that the [parties] are required to arbitrate their disputes, but that to the extent the [plaintiff] files a suit in court in New York—for example, to enforce an arbitral award, or to challenge the validity or application of the arbitration agreement—[the defendant] will not challenge either jurisdiction or venue.[23]

The *Waxfield* court relied on the Third Circuit case of *Patten Securities Corporation v.*

---

[18]424 F.3d 278 (2d Cir. 2005).

[19]*Id*. at 282.

[20]*Id*. at 283-84.

[21]*Id*. at 284 (citations omitted).

[22]*Id*.

[23]*Id*. at 285.

*Diamond Greyhound & Genetics, Inc.*[24] The plaintiff in that case argued that the defendant waived its right to arbitration by signing an agreement designating New Jersey courts as the proper forum for lawsuits.[25] The Third Circuit rejected this argument, stating,

> Conspicuously absent from the forum selection clause . . . is any reference to arbitration whatsoever. When [the plaintiff] drafted the forum selection clause it could have made a reference to arbitration in the clause if it sought to have [the defendant] waive arbitration. . . Furthermore there is nothing inconsistent between the arbitration obligation and the instant forum selection clause. Both can be given effect, for arbitration awards are not self enforceable. They may only be enforced by subsequent judicial action. Thus, even if arbitration is completed, the forum selection clause would appear to dictate the location of any action to enforce the award.[26]

Mid-West argues that the forum selection clause "allows" it to bring suit in court, thus creating an ambiguity between the two provisions that should be construed against defendant Western Plains, as the drafter of the Agreement. Mid-West further asserts that the cases that harmonize the language in forum selection clauses with arbitration clauses did not have the broad language contained in Section V in this case. The Court disagrees. The terms of a contract must be construed according to their plain meaning and in harmony with each other.[27] The forum selection clause designates Kansas as the parties' choice of judicial forum; it does not require conflicts to be exclusively resolved in Kansas courts, nor does it explicitly reserve Mid-

---

[24]819 F.2d 400, 407 (3d Cir. 1987), *abrogated on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287 (1988).

[25]*Id*. at 403.

[26]*Id*. at 407 (internal footnotes omitted); *see also Pers. Sec. & Safety Sys., Inc. v. Motorola Inc.*, 297 F.3d 388, 396 n.11 (5th Cir. 2002) ("a forum selection clause cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration.").

[27]*Metro. Life Ins. Co. v. Strnad*, 876 P.2d 1362, 1371 (Kan. 1994) (citations omitted).

7

West's right to judicial resolution of disputes. The plain language of the forum selection clause evidences an intent among the parties to permit lawsuits in the specified jurisdiction to the extent such dispute is non-arbitrable. The forum selection clause does not "allow" any suits to be brought in a particular jurisdiction, but rather, requires any lawsuits brought with respect to the Agreement to be brought in a particular jurisdiction. In fact, the language of the clause actually reaffirms the parties' commitment to alternative dispute resolution, further belying any ambiguity.

Nor does the language in Section V appreciably differ from that in *Waxfield*, where the forum selection clause provided that, "any Action may be heard and determined in such New York State court or in such Federal court."[28] Although the forum selection clause in that case recognized the possibility of litigation, the court determined that there was nothing inconsistent between that clause and the arbitration provision at issue.[29] Finally, if Mid-West had meant to protect its right to a judicial forum, it could have said so explicitly. As written, Section V reflects only the intent to reserve the parties' right to sue in Kansas courts. The Court concludes that the Tenth Circuit would, in all likelihood, rule that the parties' terms are neither ambiguous nor incompatible, and that the arbitration clause is valid and binding upon the parties.

**B.  Scope of Arbitration Clause**

The parties' dispute is clearly within the scope of arbitration. The Agreement's arbitration provision mandates arbitration of "any controversy or claim arising out of or relating

---

[28] *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 282 (2d Cir. 2005).

[29] *Id.*; *accord Motorola*, 297 F.3d at 395 (declining to find inconsistency where forum selection clause provided that "any suit or proceeding brought hereunder shall be subject to the exclusive jurisdiction of the courts.").

to this Agreement." Mid-West's Complaint clearly includes matters relating to the interpretation and performance of the Agreement.

### C. Claims Against LifePoint

Mid-West argues that it is not required to arbitrate its claims against LifePoint because LifePoint is not a party to the Agreement. Defendants counter that the claims asserted against LifePoint fall within the scope of the Agreement's arbitration provision. Generally, a non-party to an arbitration agreement is not bound by the agreement.[30] The Tenth Circuit has held that a nonsignatory to an arbitration agreement may nonetheless enforce the agreement if he is a third party beneficiary.[31] "An intent to benefit the third party must be apparent from the construction of the contract in light of all surrounding circumstances to qualify that party as a third party beneficiary."[32] Nothing in the Agreement suggests that the arbitration clause was intended to benefit third party beneficiaries.[33]

Defendants do not argue that LifePoint is a third party beneficiary. Instead, they urge the Court to allow a nonsignatory to enforce an arbitration clause under an equitable estoppel exception that allows a nonsignatory to compel arbitration when a signatory's claims are grounded in or intertwined with the terms of the written agreement. Under this "intertwined

---

[30]*AT & T Tech.s., Inc. v. Comm'n. Workers of Am.*, 475 U.S. 642, 648 (1986) (arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to submit).

[31]*O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 901 (10th Cir. 1992).

[32]*Id.*

[33]Indeed, Section 5.8 of the Agreement addresses third party beneficiaries, and states:
<u>Third Party Beneficiaries</u>. This Agreement is entered into for the sole benefit of [Western Plains] and [Mid-West]. Nothing contained herein or in the parties' course of dealings shall be construed as conferring any third party beneficiary status on any person or entity not a party to this Agreement, including, without limitation, any [Mid-West] Representative.

9

claims" theory, a signatory cannot avoid arbitration with a nonsignatory when "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement the estopped party has signed."[34] The intertwined claims theory applies "when the party ordered to arbitrate has agreed to arbitrate disputes arising out of a contract and is suing in reliance upon that contract."[35] The theory recognizes that it would be unfair to allow a plaintiff to rely on the contract when it would work to its advantage, and repudiate it when it would not.[36] Claims can be considered "intertwined" when one party to the contract claims "substantially interdependent and concerted [ ] misconduct by both the nonsignatory and one or more of the signatories to the contract."[37] Although the Tenth Circuit has not addressed the issue of whether equitable estoppel can be used to compel arbitration, both this Court and Judge Lungstrum have considered and applied the "intertwined claims" theory.[38]

In this case, Mid-West's Complaint makes repeated reference to the Agreement.[39] Mid-West's claims "arise under" the Agreement in that it was pursuant to the Agreement that each of

---

[34]*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1139 (D. Kan. 2003) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995); *cf. Estate of Pestano ex rel. Pestano v. Trans Healthcare, Inc.*, No. 05-2518, 2006 WL 2524151, *2 (D. Kan. Aug. 29, 2006) (holding "intertwined claims" theory inapplicable where action against nonsignatory was based on negligence rather than breach of the contract containing arbitration clause).

[35]*Id.* (quoting *Westmoreland v. Sadoux* 299 F.3d 462, 465 (5th Cir. 2002); *see also Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 531 (5th Cir. 2000) (upholding the use of equitable estoppel to compel the arbitration where the claims were "intertwined with and dependent upon" the agreement containing a broad arbitration clause).

[36]*Id.* (citing *Grigson*, 210 F.3d at 528).

[37]*Id.* (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); *accord Grigson*, 210 F.3d at 527.

[38]*See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d at 1139 (collecting cases); *Higgins v. Brooke Corp.*, No. 06-4111-JAR, 2007 WL 2317123, at *13 (D. Kan. Aug. 9, 2007).

[39](Doc. 1, ¶¶ 29, 33, 34, 38.)

the alleged duties and breaches by defendants arose.[40] Mid-West asserts that the alleged breaches "were material terms to the Agreement between the parties and detrimentally affected Plaintiff Mid-West's ability to fulfill its obligations under the Agreement."[41] Moreover, Mid-West does not make independent allegations against LifePoint, but rather, alleges that LifePoint "is liable for all acts and omissions" of Western Plains based on its alleged facilitation, control and direction of said acts.[42] Mid-West's allegations thus assert "substantial and interdependent" misconduct by both defendants. Because Mid-West seeks to hold LifePoint responsible for Western Plains' obligations under Western Plains' Agreement with Mid-West, Mid-West cannot now deny the applicability of the Agreement's arbitration clause simply because LifePoint was a nonsignatory to that Agreement. The Court concludes that Mid-West's reliance on the Agreement and intertwined claims against both defendants stemming therefrom is sufficient to effect an estoppel and that LifePoint is entitled to compel arbitration under the Agreement.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. 4) is GRANTED. The parties are directed to proceed to arbitration on all of plaintiff's claims and that the Court stays the judicial proceedings in this case pending completion of the arbitration process.

IT IS SO ORDERED.

Dated: December 18, 2009

                                               S/ Julie A. Robinson
                                               JULIE A. ROBINSON
                                               UNITED STATES DISTRICT JUDGE

---

[40]*Id.* ¶¶ 25, 28, 33.

[41]*Id.* ¶ 17.

[42]*Id.* ¶ 22.